FILED

2022 Dec-01  AM 11:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JEFF WHITE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 7:21-cv-00668-LSC |
| U.S. PIPE, A FRONTERRA COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

Plaintiff Jeff White ("Plaintiff") brings this action against Defendant U.S. Pipe ("U.S. Pipe" or "Defendant") under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981. He asserts claims of discrimination, retaliation, and hostile work environment. Before the Court is Defendant's Motion for Summary Judgment (Doc. 18). For the reasons stated below, Defendant's motion is due to be granted in part and denied in part.

I.   **BACKGROUND**[1]

---

[1]   The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the

The factual details necessary for the Court's analysis are contained within that analysis. The background facts necessary to place those details into context are as follows: Plaintiff has worked in the Fab Shop[2] of U.S. Pipe's Bessemer, Alabama location since 2006. David Mize ("Mize") was, at all times relevant, the Plant Manager, and Gary Dunlap ("Dunlap") was Plaintiff's supervisor. In 2017, Plaintiff filed an EEOC complaint of racial discrimination against Defendant. Since then, he has made several similar complaints internally.

In July 2020, the Company posted a job listing for "Team Lead," a position that was higher than the Plaintiff's. Dunlap and a human-resources officer interviewed four employees for the position. Three applicants, including the Plaintiff, were black, the fourth applicant, Etheridge, was white. The white applicant received the promotion. Plaintiff filed his second EEOC complaint of discrimination for the denial of this promotion in September of 2020.

## II.   STANDARD OF REVIEW

---

exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (*"*[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . .*"*).

[2]        "The Fab Shop is responsible for producing certain types of pipe and other supporting materials." (Doc. 19 at 3-4).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213-14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory

allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (*per curiam*) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III.  ANALYSIS

Plaintiff asserts claims based upon the above-described promotion, as well as a hostile work environment he allegedly faced. The Court addresses both below.

### A. FAILURE TO PROMOTE CLAIM

Plaintiff's Complaint alleges that he was denied the promotion to Team Lead on the basis of both his race and what he contends was protected activity. However, Plaintiff has waived his race-based theory at this stage by failing to develop this argument at all in his Brief. *Cent. States, Se. & Sw. Areas Pension Fund v. Midwest*

*Motor Exp., Inc.*, 181 F.3d 799, 808 (7th Cir. 1999)("Arguments not developed in any

meaningful way are waived.").[3] Nonetheless, the Court considers both of Plaintiffs'

theories below out of an abundance of caution.

Title VII prohibits discrimination both on the basis of race and in retaliation

for protected activity. 42 U.S.C. §§ 2000e-2 and 2000e-3. Title VII and § 1981

"have the same requirements of proof and use the same analytical framework."

*Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998). Absent direct

evidence of racial discrimination,[4] such as specific statements made by the

employer's representatives, a plaintiff may demonstrate circumstantial evidence of

disparate treatment through the McDonnell Douglas burden-shifting framework. *See*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Tex. Dep't of Cmty.*

---

[3]      The Introduction to Plaintiff's Brief states "he was denied a promotion. . . because of his race," and his Argument section has a subsection devoted to "Race Discrimination in Promotions." (Doc. 23 at 1). However, half of that section is merely a statement of the *McDonnell Douglas* burden shifting framework, and the other half only describes how he "established his *prima facie* case of race discrimination in promotions." (*Id.* at 19). He does not meaningfully develop this theory in any way in his Brief, most importantly by failing to even address the necessary causation prong of his race-based theory. That is, Plaintiff does not attempt to argue he was denied the promotion because of his race, much less provide any evidence indicating so. Instead, his Brief is clearly focused on demonstrating that he was denied this promotion and faced other acts of retaliation for engaging in what he contends was protected activity.

[4]      "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir. 1989). Because Plaintiff has not offered any direct evidence of discrimination, the Court addresses his claims under the standards applicable to circumstantial evidence of discrimination. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).

*Affs. v. Burdine*, 450 U.S. 248 (1981). Under this framework, the aggrieved employee creates a presumption of unlawful discrimination by first establishing a *prima facie* case of discrimination. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). The burden then shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221 (citing *Burdine*, 450 U.S. at 253). If the employer proffers a legitimate, nondiscriminatory reason, the burden returns to the employee to prove that the employer's reason is a pretext for unlawful discrimination. *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008). Although the *McDonnell Douglas* framework is one way of showing discriminatory intent, it is not the only way to show discriminatory intent in a Title VII or § 1981 discrimination claim. *See Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "[T]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* As Title VII and § 1981 claims are analyzed in the same manner, the Court will address both claims together.

To establish a *prima facie* case of discrimination in the context of a failure to hire or promote claim, a plaintiff must show: (1) he is a member of a protected class, (2) he was qualified and applied for the position, (3) he was rejected, and (4) the position was filled by a person outside of his protected class. *See Vessels v. Atlanta*

*Ind. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005) (per curiam) (citing *McDonnell Douglas*, 411 U.S. at 802). To establish that a plaintiff is qualified, he "need only show that he . . . satisfied an employer's objective qualifications." *Id.* at 769. The plaintiff does not need to address the "relative qualifications" of other applicants as part of his *prima facie* case. *Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998).

It is undisputed that Plaintiff is a member of a protected class, he was qualified and applied for the position of Team Lead, he was rejected, and the position was filled by a person outside of his protected class. Plaintiff has therefore established a *prima facie* case of discrimination on the basis of race and protected activity.

Because Plaintiff has established a *prima facie* case of discrimination, the burden shifts to U.S. Pipe to provide a legitimate, nondiscriminatory reason for its promotional decision. *See Lewis*, 918 F.3d at 1221 (citing *Burdine*, 450 U.S. at 253). The burden at this stage "is exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). It is merely a burden of production, not a burden of proof. *Id.* As detailed more fully below, U.S. Pipe has satisfied its burden at this stage by providing two legitimate, nondiscriminatory justifications for choosing to promote the white employee who had not engaged in protected activity, Etheridge, over Plaintiff: because he had a better interview and because he was more qualified.

Because U.S. Pipe has articulated a legitimate, nondiscriminatory reason for its decision, "the burden shifts back to the plaintiff to produce evidence that the employer's proffered reason [is] a pretext for discrimination." *Alvarez*, 610 F.3d at 1264. Pretext can be shown "either *directly* by persuading the court that a discriminatory reason more likely motivated the employer or *indirectly* by showing that the employer's proffered explanation is unworthy of credence." *Brooks v. Cnty. Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir.2006) (emphasis added and quotation omitted). Either way, "[i]f the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. . . . Quarreling with that reason is not sufficient." *Wilson*, 376 F.3d at 1088.[5] Where an employer proffers multiple legitimate justifications for an employment decision, "a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that *each of* the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transp.*, 229 F.3d 1012, 1037 (11th Cir.2000) (en banc) (emphasis added).

U.S. Pipe's first justification for promoting Etheridge is that he had a better interview than Plaintiff. As Plaintiff concedes, Dunlap, the employee charged with

---

[5]     *See also Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1278 (11th Cir. 2008) ("It is the plaintiff's burden not merely to raise a suspicion regarding an improper motive, but rather to demonstrate there is a genuine issue of material fact that the employer's proffered reason . . . was pretextual.").

making the promotional decision, "testified that he chose Etheridge because of his answers in the interview." (Doc. 23, p. 25). Plaintiffs generally attempt to rebut an interview-based promotion decision by either elevating their own interview performance, degrading the interview performance of the selected candidate, or doing both.

Plaintiff attempts neither. He does not argue he performed well during his interview and he does not argue Etheridge interviewed poorly.[6] The record indicates neither argument would have been successful. Plaintiff and Etheridge's responses to two interview questions speak for themselves on this point. When asked how they would improve operations in the Fab Shop, Etheridge responded with a plan for increasing production through the acquisition of additional equipment, (Doc. 19 at 6), and Plaintiff responded, "basically all you could do is clean it." (*Id.* at 7). When asked what motivated them to apply for the promotion, Etheridge discussed how he wanted to play a larger role in the future operations and success of the company, and Plaintiff said he wanted to make more money.[7] (*Id.*). When his interviewer asked him

---

[6]    Instead, Plaintiff argues the subjective nature of the interview process itself is sufficient to demonstrate pretext. That argument fails. *Denney v. City of Albany*, 247 F.3d 1172, 1185 (11th Cir.2001) ("[T]he fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext.").

[7]    In his Brief, Plaintiff does not deny having made this statement—he only denies having previously *testified to* making the statement. (*See* Doc. 23 at 15) ("In his *testimony* about everything that was said in the interview, he did not *testify* that he said anything about wanting to make more

to repeat himself, Plaintiff again said that he wanted to get the promotion so that he could make more money. (*See* Ex. 3, Mize Dep., Plaintiff's Ex. 14). Their responses to other questions compare similarly. In total, a reasonable juror could not find Plaintiff interviewed better than Ethridge.

U.S. Pipe's other justification for promoting Etheridge was that he was more qualified. Specifically, U.S. Pipe claims that Etheridge was more qualified than Plaintiff based on their leadership and synergistic skills, as well as Etheridge's work performance at U.S. Pipe since 2011. To successfully challenge an employer's explanation that it promoted the better qualified candidate, the plaintiff must show that "the disparities between the successful applicant's and his own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (per curiam) (quoting *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004), *overruled in part by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006) (per curiam)); *see also Ash*, 546 U.S. at 457 (approving of this language from *Cooper*). Furthermore, the plaintiff cannot prove pretext by merely arguing or even showing that he was better qualified

---

money.")(emphasis added). Thus, Defendant's evidence that Plaintiff *did* make this statement during the interview is uncontradicted by the record. (*See* Ex. 3, Mize Dep., Plaintiff's Ex. 14 and Ex. 5, Dunlap Dec. at 8).

than the individual who received the promotion. Rather, the plaintiff must show that the "defendant's employment decisions . . . were in fact motivated by race." *Springer*, 509 F.3d at 1349.

Here, U.S. Pipe provided an honest explanation of why it determined Etheridge was more qualified, and Plaintiff has not presented any evidence to suggest this explanation is untrustworthy. Plaintiff concedes that Dunlap believed "Etheridge worked well with others and had great leadership skills." (Doc. 23, p. 25). Dunlap further testified that Etheridge "showed initiative, exhibited leadership skills, . . . became trained on all of the machines, and served as a resource for his colleagues." (Dunlap Dep. At 80:3-83:21). These qualities of synergy and leadership were important to have in a Team Lead, in U.S. Pipe's view, because the role requires directing and training hourly employees on following plant and safety rules. (*Id.*).

Plaintiff proffered no evidence indicating he was a leader,[8] worked well with others, had initiative comparable to what his superiors saw in Etheridge, or was trained on a similar number of machines. Instead, Plaintiff argued that he was more qualified than Etheridge because he "worked at U.S. Pipe much longer than

---

[8] The only statement Plaintiff's Brief makes regarding his own leadership skills is one sentence with no evidentiary support cited: "[Plaintiff] had already proven himself as a Team Leader for many years." (Doc. 23 at 27).

Etheridge. . . had previously worked for several years [there] as a Pipe Team Leader, while Etheridge had not. . . [and] had attended and completed leadership training at U.S. Pipe, while Etheridge had not." (Doc. 26 at 24).[9] Although this evidence may demonstrate Plaintiff was qualified, it does not demonstrate Plaintiff was *more* qualified than Etheridge. Instead, because this evidence involves qualities which U.S. Pipe did not use to justify hiring Etheridge—seniority, experience in one specific position, and one specific type of training—allowing this evidence to demonstrate Plaintiff was more qualified than Etheridge would require "quarrel[ling] with the wisdom" of the Defendant as an employer. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).

In short, the record demonstrates that "a reasonable juror could [not] infer discriminatory intent from the comparison" of Plaintiff and Ethridge's qualifications and interview performances. *Lee*, 226 F.3d at 1255. Thus, Plaintiff's direct attacks on both Defendant's lawful justifications fail.

Plaintiff's indirect pretext attack fails as well. A plaintiff may establish pretext "indirectly by showing that the employer′s proffered explanation is unworthy of credence." *Brooks v. County Comm′n of Jefferson County, Ala.*, 446 F.3d 1160, 1163

---

[9]    Etheridge had worked at U.S. Pipe since 2011 and has an associate degree in Applied Sciences specializing in Industrial Maintenance. (*See* Pl. Ex. 28). The Plaintiff had worked there since 2006 and has no college or university education. (*See* Pl. Ex.  27).

(11th Cir.2006) (quotation omitted). In his indirect argument, Plaintiff lays out what amounts to an elaborate, multi-year conspiracy between several U.S. Pipe decision-makers to promote a white employee to Team Lead. Plaintiff focuses on four facts. As discussed below, these facts are insufficient to demonstrate pretext.

First, Plaintiff discusses the circumstances surrounding the initial posting of the Team Lead position in September 2019. He notes that he was not selected for an interview back then and that the listing was withdrawn after the "leading Caucasian candidate withdrew from consideration." (Doc. 23 at 26). The undisputed record demonstrates that the listing was taken down back in 2019 because Dunlap and Mize "determined that an additional supervisor, rather than a Team Lead, would best fill the needs of the Fab Shop based on the Company's plans at that time to expand." (Doc. 19 at 2). Plaintiff provided no evidence indicating that this was not true or was pretextual. Thus, the fact that Plaintiff was not selected for this position does *not* indicate pretext. However, the fact that Plaintiff was not even selected for an interview, despite the fact that he was qualified, does provide some support for his pretext argument.

Second, Plaintiff discusses the circumstances surrounding the posting of a supervisor position in March of 2020, for which two black applicants and two white applicants interviewed. Plaintiff claims "the Company decided to scrap plans for

[the] position" to avoid either having to promote the clearly most qualified candidate, a black employee, or having to justify promoting the less-qualified white employee. (Doc. 23 at 13). Plaintiff cites no evidence in support of this conclusory statement.

Third, Plaintiff points to two comments Dunlap allegedly made. Plaintiff claims that "Dunlap described the race discrimination complaints made by [Plaintiff] and others to management as 'embarrassing'" and thought those complaints "upset people." (Doc. 23 at 9, 25, 28). Plaintiff's portrayal of these comments is misleading. The undisputed record is that Dunlap's comments referred to a *meeting* as embarrassing—not the race discrimination complaints themselves that were the topic of that meeting.[10] These comments do not indicate pretext.

Fourth, Plaintiff discusses various work opportunities Etheridge received, including "the opportunity to fill-in as Team Lead," control of "keys to the Fab Shop and a radio," and being "allowed to hand out assignments to hourly

---

[10]    In making this argument, Plaintiff only cited to Dunlap's Deposition testimony. According to that testimony, the meeting was called because U.S. Pipe "had an employee that was enraged and making threats." (Dunlap Depo. p. 90). That employee was calling the president of the company, other employees not mentioned in this suit, and the company as a whole all racists. (*Id.*) The employee further said, according to Dunlap, that "he had had so much of it that he was ready to go off and he didn't know what he'd do." (*Id.*) After recounting these facts, Dunlap said that "the things that went on in that meeting . . . was a pretty embarrassing situation for our whole department. . . . Most of the employees were very embarrassed and they hated to see what had happened. Because most of the employees come to me and expressed that to me." (*Id.* at p. 91).

employees." (Doc. 23 at 13).  Plaintiff also alleges "Etheridge . . . spent most of his time in Dunlap's office, instead of working on the floor." (Doc. 23 at 11). Plaintiff claims "[a]ll this work experience helped Etheridge obtain" the promotion, and argues that the Defendants' provision of these opportunities to Etheridge indicates their discriminatory intent in denying him the promotion. (Doc. 23 at 27). There are several issues with this argument. The record indicates that Defendant had several, reasonable and lawful reasons for assigning some of these opportunities to Etheridge. For example, Dunlap claims "Etheridge and another employee were given a radio only when necessary to step in for the forklift driver at the Fab Shop." (Doc. 24 at 5, citing Dunlap Dep. At 80:16-19). Plaintiff provides no evidence indicating that was not the true reason. More importantly, it is not a reasonable inference to conclude that a company discriminatorily denied an employee a promotion based on the fact that the company allowed a qualified employee to gain work experience by spending time in his supervisor's office and delegating work assignments.

In summary, the undisputed record demonstrates that U.S. Pipe made its Team Lead promotional decision based on the applicants' interview performances and qualifications. Plaintiff has failed to rebut either of those lawful justifications directly and has failed to provide sufficient indirect evidence indicating those justifications are "unworthy of credence." *Brooks*, 446 F.3d at 1163. Accordingly,

Defendant is entitled to judgement as a matter of law as to Plaintiff's failure to promote claim, whether that claim is premised upon race or protected activity.

## B. HOSTILE WORK ENVIRONMENT CLAIM

Plaintiff also brings a claim for retaliatory hostile work environment. Title VII prohibits the creation of a hostile work environment in retaliation for an employee's participation in a protected activity. *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 835 (11th Cir. 2021). The Eleventh Circuit has "clarified that retaliatory hostile work environment claims are properly analyzed under the standard articulated by the Supreme Court in *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), rather than the more stringent 'severe or pervasive' standard." *Tonkyro*, at 833 (citing *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855 (11th Cir. 2020)). As the Supreme Court explained in *Burlington*, this standard is phrased in general terms "because the significance of any given act of retaliation will often depend upon the particular circumstances." 548 U.S. at 69. Thus, for example, even employment actions such as a "schedule change" or "a refusal to invite an employee to lunch" could "deter a reasonable employee from complaining about discrimination" in certain circumstances. *Id.* Retaliatory hostile work environment claims thus have three elements: (1) the plaintiff engaged in protected activity; (2) a causal connection existed between the protected activity and complained of conduct,

*see Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); and (3) the conduct complained of "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Tonkyro*, at 836 (quotation omitted). The Court addresses each element in turn.

Although the Defendant does not appear to dispute the first element, Plaintiff has provided sufficient evidence to demonstrate he engaged in protected activity. Specifically, Plaintiff presented evidence that he filed EEOC discrimination complaints on January 30, 2018, and in September 2020. Moreover, Plaintiff provided sufficient evidence to demonstrate that he made various informal discrimination complaints, including in late 2018 and June 2020. These complaints lead to Plaintiff acquiring a reputation for making discrimination complaints and "discussing race issues" in his department. (*See* Dunlap Depo. p. 101).

The Court must next determine whether Plaintiff's protected activity was causally related to the alleged hostile work environment. Plaintiff identifies seven instances of adverse employment action and harassment which, he argues, together amount to a hostile work environment. The first involves Plaintiff's December 2017 application for the position of Pipe Cutter and Grinder. Despite having previously held this position and being the most experienced candidate, Plaintiff was not interviewed or selected. Plaintiff filed an EEOC complaint of racial discrimination

regarding this position and, as a result of the complaint, U.S. Pipe awarded Plaintiff the position. But for some reason, he was not moved to that position for three months. Instead, he agreed to first "work in the lab until another employee . . . came back from medical leave." (Doc. 23, p. 7). However, Plaintiff alleges that he was "not allowed to work in the lab." (*Id*.). As a result, Plaintiff "did not receive the higher pay of the lab job and he had to wait several months to move into the" Pipe Cutter and Grinder position. *Id.*

Second, Plaintiff again points to the fact that he was not selected to interview for the Fab Shop Team Lead position in September 2019. Third, Plaintiff testified that he is regularly denied the ability to work overtime and, when he complained of this to Dunlap, Dunlap responded that "he could make it to where we can't get no overtime." (White Depo., p. 153:13-14). Fourth, Plaintiff testified that he is regularly forced to perform extra tasks. Fifth, Plaintiff testified that Dunlap told him that Mize said for Dunlap to run Plaintiff away from U.S. Pipe. Sixth, Plaintiff testified that Randy Bryant told Plaintiff to watch out because Mize "was out to get him." Finally, Plaintiff testified that Dunlap ordered him to take a drug test in 2020, but "[w]hen he arrived for the test, the test administrator told him that he was not on the list." (Doc. 23, p. 18).

Based on the evidence before it, the Court cannot say that a reasonable juror would be unable to conclude that this alleged hostile work environment was causally related to Plaintiff's Protected activity. Moreover, the Court cannot say that a reasonable juror would be unable to conclude that the above-described alleged hostile work environment "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Tonkyro*, at 836. Accordingly, the Defendant is not entitled to judgement as a matter of law as to Plaintiff's retaliatory hostile work environment claim.

## IV.   CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is due to be granted in part and denied in part. The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** AND **ORDERED** ON DECEMBER 1, 2022.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

211854